UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

| | |
|---|---|
| BRUCE L. WARNER,           )<br>                             )<br>     Plaintiff,              )<br>                             )<br> v.                          )<br>                             )<br> UNITED STATES POSTAL SERVICE, )<br>                             )<br>     Defendant.              )<br>_____) | Case No. 1:15-cv-0284<br><br>Honorable Robert Holmes Bell<br><br>**REPORT AND RECCOMENDATION** |

This is an action brought by plaintiff Bruce L. Warner against the United States Postal Service. The United States Postal Service moved to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted (Defendant's Motion, Dkt. #4, ID 10). For the reasons listed below, I recommend that the case be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

**Complaint**

On March 17, 2015, plaintiff filed his complaint against the United States Postal Service (USPS). (Complaint, Dkt. 1). He alleges that while he was an USPS "employe[e] from 1987-2011," he was subjected to "deliberate and calculated mental torture … by postal management." (*Id.* at 1, ID 7-8). He invokes the "United Nations Convention against Torture" and "Public Law 102-256" as a basis for jurisdiction over the USPS. (*Id.* at 1, ID 6).

Plaintiff alleges three specific instances over the course of his employment in which he was subjected to mental torture. (Dkt. 1, ID 7-8). First, he states that "from 1993-2002 … [he] was allowed by postal management to be hypnotized,

without [his] consent or knowledge[.]" (*Id.* at 1, ID 7). He claims that "[d]uring the[] hypnotic sessions, [he] was rendered helpless to defend [him]self against the focused abuse," which "included … asking [him] personal questions[.]" (*Id.*). Plaintiff alleges that he "disclos[ed] intimate details of [his] private life" during the "hypnotic sessions." (*Id.*).

Second, plaintiff alleges that, upon being transferred and suspended from his job, he "was mentally tortured by postal management in a series of contrived personnel letters sent to [his] mailing address." (Dkt. 1, ID 7). He claims that "these letters depicted a fictionalized account of alleged incidents that occurred between [him] and a female postal employee." (*Id.*). He further states that he "believe[s] that the narrative for the[] fictitious stories was formed from the disclosures [he] had made when [he] had been hypnotized ten years earlier." (*Id.* at 1, ID 8).

Finally, plaintiff alleges that the "mental torture" that was "orchestrated by postal management took another form in June of 2005 during an encounter [he] had with a man who had been a neighbor of [his] family's the year [he] graduated high school." (Dkt. 1, ID 8). Plaintiff did not include any details about the encounter, nor supply any explanation regarding defendant's purported involvement. (*See* Dkt. 1, ID 8).

Plaintiff seeks $25,000,000 in compensatory and punitive damages for "mental torture" by postal management that had the effect of "releasing memories from [his] subconscious, which [he] had been previously unaware of and were of no concern to [him], into [his] consciousness and has created a condition of severe mental trauma in [him] in varying degrees since June of 2005." (Dkt. 1, ID 8).

## Standard of Review

"The judicial Power shall extend to all Cases … arising under th[e] Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority." U.S. Const. art. III, § 2, cl. 1. This provision of the Constitution defines the judicial power and identifies the sources of law under

which a district court may exercise that power. The United States Code granted this power to the district courts in Title 28. Section 1331 states: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "A suit arises under the Constitution and laws of the United States only when the plaintiff's statement of his own cause of action shows that it is based upon those laws or that Constitution." *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152 (1908). A district court must have subject matter jurisdiction over the claims asserted, and plaintiff bears the burden of establishing that such jurisdiction exists. *See, e.g., Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990).

Defendant seeks dismissal of plaintiff's complaint under Rules 12(b)(1) and 12(b)(6). Rule 12(b)(1) allows for a party to raise the defense of a "lack of subject matter jurisdiction." The Sixth circuit has stated:

> Motions to dismiss for lack of subject matter jurisdiction fall into two general categories: facial attacks and factual attacks. A facial attack is a challenge to the sufficiency of the pleading itself. On such a motion, the court must take the material allegations of the petition as true and construed in the light most favorable to the nonmoving party. A factual attack, on the other hand, is not a challenge to the sufficiency of the pleading's allegations, but a challenge to the factual existence of subject matter jurisdiction. On such a motion, no presumptive truthfulness applies to the factual allegations, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.

*United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994) (internal citations omitted).

Further, a complaint must present "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8. If the party filing a complaint fails to adequately state a claim, Rule 12(b)(6) allows for the opposing party to raise the defense of "failure to state a claim upon which relief can be granted." When deciding a Rule 12(b)(6) motion, a district court "must (1) view the

complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009). Furthermore, a district court "need not accept a 'bare assertion of legal conclusions.'" *Id.* If the court finds that the complaining party fails to state a claim, Rule 12(b)(6) dictates that the complaint must be dismissed.

When considering motions based on Rules 12(b)(1) and 12(b)(6) together, courts must "consider the 12(b)(1) motion first, since the Rule 12(b)(6) challenge becomes moot if th[e] court lacks subject matter jurisdiction." *Moir*, 895 F.2d at 269. This procedural order is significant because if a district court lacks jurisdiction, it need not assess the validity of a claim, since this determination is an exercise of jurisdiction in itself. *See Bell v. Hood*, 327 U.S. 678, 682 (1946).

## Discussion

### United Nations Convention Against Torture

Plaintiff is attempting to assert a claim against defendant under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, 1465 U.N.T.S. 85, 23 I.L.M. 1027 (the "Convention"). The jurisdictional statement in the complaint is indulgently construed as an assertion that the Convention creates the ability to bring private civil claims for torture that allegedly happened within the United States against offenders of the treaty.

Under the Constitution, "a treaty is placed on the same footing, and made of like obligation, with an act of legislation. Both are declared by [the Constitution] to be the supreme law of the land." *Whitney v. Robertson*, 124 U.S. 190, 194 (1888). However, "treaties … do not always directly create rights that a private citizen can enforce in court." *Renkel v. United States*, 456 F.3d 640, 643 (6th Cir. 2006). As the Sixth Circuit stated in *United States v. Emuegbunam*,

> A treaty is primarily a compact between independent nations. It depends for the enforcement of its provisions on the interest and honor of the governments which are

4

> parties to it. If these fail, its infraction becomes the subject of international negotiations and reclamation, so far as the injured parties choose to seek redress, which may in the end be enforced by actual war. It is obvious that with all this the judicial courts have nothing to do and can give no redress.

*United States v. Emuegbunam*, 268 F.3d 377, 389 (6th Cir. 2001) (quoting *Head Money Cases*, 112 U.S. 580, 586 (1884)).

With the nature of treaties in mind, as a general rule, "courts *presume* that the rights created by an international treaty belong to a state and that a private individual cannot enforce them." *Renkel*, 456 F.3d at 643 (emphasis in original) (quoting *Emuegbunam*, 268 F.3d at 389). "Some treaties may, however, directly provide for private rights of action." *Renkel*, 456 F.3d at 643. According to the Sixth Circuit,

> 'Self-executing treaties' are those treaties which do not require domestic legislation to give them the full force of law. Such treaties can create private rights enforceable in court. On the other hand, 'non-self-executing' treaties do require domestic legislation to have the force of law. For a non-self-executing treaty, any private claim must be based on a violation of the domestic law implementing the provisions of that treaty. In other words, federal courts "are bound to give effect to international law and to international agreements, except that a 'non-self-executing' agreement will not be given effect as law in the absence of necessary authority."

*Id.* (internal citations and footnotes omitted). "Whether a treaty is self-executing is an issue for judicial interpretation." *Id.*

In *Renkel*, the Sixth Circuit specifically addressed the Convention and analyzed the nature of the treaty in regards to private causes of action. *Id.* at 644. The Sixth Circuit held that Articles 1–16 of the Convention are not self-executing and "they do not create private rights of action[.]" *Id.* Accordingly, "any private lawsuit seeking to enforce the United States' obligations under the Convention must be based on domestic law." *Id.* The Sixth Circuit found that no domestic law

5

implementing the Convention, "provide[d] civil redress for torture within the United States." *Id.* at 644-45.

Turning to the present case, plaintiff must bring allegations that are actionable under this Court's subject matter jurisdiction. Defendant moved for dismissal of the Complaint under Rule 12(b)(1). (Dkt. 4, ID 10). Defendant presented a factual attack, alleging that this Court lacks subject matter jurisdiction over the Convention. The Postal Service is correct.

The Convention is not self-executing and, accordingly, does not establish a basis for civil actions within the United States. *See Renkel*, 456 F.3d at 644. The claim under the Convention does not arise under federal law. This portion of the complaint should be dismissed pursuant to Rule 12(b)(1).

## Torture Victim Protection Act

Plaintiff claims entitlement to an award of damages against defendant under the Torture Victim Protection Act (TVPA) (Public Law No. 102-256). The TVPA provides a civil action against individuals who commit certain acts:

> (a) LIABILITY.—An individual who, under actual or apparent authority, or color of law, of any foreign nation—
>   (1) subjects an individual to torture shall, in a civil action, be liable for damages to that individual; or
>   (2) subjects an individual to extrajudicial killing shall, in a civil action, be liable for damages to the individual's legal representative, or to any person who may be a claimant in an action for wrongful death.
> (b) EXHAUSTION OF REMEDIES.—A court shall decline to hear a claim under this section if the claimant has not exhausted adequate and available remedies in the place in which the conduct giving rise to the claim occurred.
> (c) STATUTE OF LIMITATIONS.—No action shall be maintained under this section unless it is commenced within 10 years after the cause of action arose.

Torture Victim Protection Act of 1991, Pub. L. No. 102–256, 106 Stat. 73 (1992) (codified at 28 U.S.C. § 1350 note).

Congress passed the TVPA to "carry out obligations of the United States under the United Nations Charter and other international agreements pertaining to the protection of human rights by establishing a civil action for recovery of damages from an individual who engages in torture." *Id.* The TVPA was codified at 28 U.S.C. § 1350.[1]

In *Mohamad v. Palestinian Authority*, __ U.S. __, 132 S. Ct. 1702 (2012), the Supreme Court interpreted the meaning of the TVPA. The Court held that the term "individual" as used in the TVPA encompasses "only natural persons." *Id.* at 1705. Further, the Court held that "Congress did not extend liability to organizations, sovereign or not." *Id.* at 1710.

Accepting all of the plaintiff's factual allegations as true, I find that the complaint fails to state a claim upon which relief can be granted. Because the United States Postal Service is not a natural person, it cannot be held under liable under the TVPA.[2] Accordingly, this portion of the complaint should be dismissed pursuant to Rule 12(b)(6).

---

[1] The name of the relevant section of the United States Code is: "*Alien's* action for tort." 28 U.S.C. § 1350 (emphasis added). This act specifically states, "The district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." *Id.*
[2] Even if plaintiff were able to avoid the Supreme Court's direction in *Mohamad* and prove that the USPS is an individual under the TVPA, his claim would still fail as § 1350 only applies to aliens and not United States citizens.

## Conclusion

For the foregoing reasons, I recommend that defendant's motion be granted, and this action be dismissed because this Court lacks subject matter jurisdiction over the Convention and the complaint fails to state a claim upon which relief can be granted under the TVPA.


Dated: July 6, 2015                              /s/  Phillip J. Green
                                                 United States Magistrate Judge


### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCIVR 72.3(b).  Failure to file timely and specific objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008).  General objections do not suffice.  *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).